6-1 Adams v. United States 6-1 Adams v. United States Mr. Griffin. Good morning, Your Honor. Appellants are physical security specialists employed by the United States Secret Service. They're seeking damages pursuant to the Back Pay Act for pay they allege they normally would have earned but for the agency's admitted failure to schedule their work days across consecutive days as required by Section 6101 of Title V. When possible. Your Honor, that's not quite correct. The statute does say when possible. But let me point you to the exact language in that clause. And this is 6101A3B. The basic 40-hour work week of each federal employee is scheduled on five days, Monday through Friday, when possible. Right. When possible applies to Monday through Friday. And the Monday through Friday component is not at issue in this case. What the appellants are claiming is that the agency failed to schedule their five days consecutively and their two off days consecutively as a result. And that's the same whether their regular work day is or regular work week is Monday through Friday, Tuesday through Saturday, Wednesday through Sunday. It doesn't matter. So is there anything in the claim that you're asserting that would entitle your clients to pay that is different from or greater than the pay they actually received? There is, Your Honor. But let me preface my answer by saying we don't believe that is the issue here. The government moved to dismiss only under Rule 12b-1. And the Court of Federal Claims purported to dismiss only on that basis. And the only question on that, under 12b-1, on a Tucker Act case, is whether the statute that they're seeking relief under is money-mandating. That's a plaintiff-neutral question and that's a fact-neutral question. You don't have to look at the complaint. You don't have to look at the facts. You only have to look to the U.S. Code and see what the Back Pay Act says. And the Back Pay Act says when certain conditions are met. Well, we're not talking about the Back Pay Act here. So why don't you, before I forget what my question is, why don't you answer it? Which is when we're looking at the statutory provisions in 61, whatever the number is, is your claim here with respect to a violation of that provision, would it entitle your clients to a pay that is different from or greater than the pay they actually receive? We believe it does, Your Honor, and we believe we can prove that once we get to the merits of the case. And let me answer this, and this will reference the Back Pay Act. I don't think there's a way to avoid it. Let's talk about the other act, the 61, I forget the numbers. 61-01. 01. Let's talk about 61-01. Let's stay with that before we get to the Back Pay. How would the entitlement change with respect to your clients whether or not there's a violation of that provision? If they're working Monday through Friday or Monday, Tuesday, Thursday, Friday, and Saturday, how does that change the amount of pay they are getting? Right, and so forgive me for veering a little bit, but the question, the way to answer that under the Back Pay Act is what they, quote, normally would have earned but for the unjustified personnel action. And what we believe these security specialists normally would have earned but for that violation is regular pay for five days during their work week and premium pay for any days they work in addition to that work week. But your claim here doesn't deal with days in addition to the 40 hours, right? I thought the claim here dealt with whether you assumed you're working five days and a question is which of those five days are we talking about? Not that they worked five days and then are they entitled to overtime or premium pay for any additional work. Am I misunderstanding? Yeah, let me break down our theory. And again, our position is that this goes to the merits of whether these particular plaintiffs can recover, not to whether the statute itself mandates money to a plaintiff who succeeds. But, so the court understands, our theory has two pieces of it. One, and let's look just at the five-day work week for this. Where in the statute does it discuss compensation at all? In 6101, it doesn't. 6101 is the scheduling statute. Right. It has to be construed, but the question under the Back Pay Act is what pay would these employees, quote, normally have earned? And to do that, you need to look at both what shifts they normally would have been scheduled for and then, of course, also to the compensation statutes and the overtime statutes to see what pay they normally would have earned for the shifts they normally would have been scheduled for. But they wouldn't be violating the provision that you're citing if, in fact, they scheduled them Tuesday through Saturday. If they just scheduled five days consecutively Tuesday through Saturday, no, that's correct. They would not be. But again, that's not what we're claiming. What we're claiming, just to use that example, and again, this is, we don't know the specific days of the week because we haven't gotten to discovery. We haven't seen payroll records yet. But let's say one of our plaintiffs is regularly scheduled Tuesday through Saturday. What we're alleging happened is the agency said, okay, work Tuesday, Wednesday. Take Thursday off. We're not going to pay you for Thursday. Work Friday and Saturday normal, and then also come work again and work Sunday. So in other words, still working five days, but those five days aren't consecutive as required by this provision. When possible. When possible. And the two off days are not consecutive as required by this provision. So I guess I'm still trying to understand. So I'm with you on the argument that the when possible might not relate to this two days off. But even if it doesn't, what is the differential in pay? Are you saying that somehow they can't have you work on a weekend? They can have you work on a weekend. But the question, again, under the Back Pay Act is what an employee, quote, normally would have earned. And the answer, what an employee normally would have earned for working on a weekend is premium pay. That's assuming they've already worked five days. Right. Right. And that's what we're talking about. And so let me go back to your question, Judge Prost. Our merits theory here has two components. The first is that they should have received regular pay for that day in the middle of the week that they didn't receive any pay for. And I think it helps. Even if they didn't work on it? I don't understand. Yes. I think it helps. Let me give you two ways to think about it. The first is, say our claim was just that. Say we have full-time employees who are entitled to work as scheduled here. And the agency says, gee, we need to save some money. Next month, why don't you all come in only four of the five days you're supposed to schedule. You're supposed to be scheduled. And we'll just pay you 80%. How's that? And the answer can't be, well, I guess that's fine because 6101 doesn't say anything about money. The answer is, what pay would they have normally? The answer is two parts. First, that that's a violation of 6101. That's a wrongful, unjustified, or unwarranted personnel action under the Back Pay Act. And two, this is the second element of the Back Pay Act claim, that the pay they normally would have earned in that situation is for five days, not four. And so that's what we're claiming there. But you're not asserting – I get why everybody would want two days off in a row. But you haven't – and it's the second piece of the Back Pay Act that really is the most concerning. So the question is, you have not alleged that there are personnel that are being forced to work only four days. No. You said they get to work five days. They just don't get their two days off. They do. That's correct. For two days in a row. Yes, that's correct. That's exactly what we're alleging. And what we're alleging is that they normally would have earned premium pay for one of those days they're working on their weekends, but for the violations of 6101. No, not normally because nobody – we're not talking about anyone here who was required to work more than 40 hours a week. Their only entitlement to premium pay or overtime pay for Saturday and Sunday would come if they had worked for five days before that. And we were talking about time over 40 hours, right? And that's not what we're talking about in this picture. No, I disagree. I disagree. You look at the work week and what we're – and again, these are questions for the merits. What we're going – what we hope to prove on the merits if we get to that point is that these individuals normally would have had to work both the five days for which they were regularly scheduled  And the reason is that the agency apparently needed them to work on the weekends. In other words, but for the schedule violation – But as Judge O'Malley pointed out a few minutes ago, your claim is for non-consecutive days off, right? So if you were required to work Tuesday through Saturday, that would not be a problem. That would not be something covered by your complaint even though that includes Saturday, right? No, no. That's not quite it. Our contention is that normally in weeks where the agency needed these individuals to work on their weekends, they would have also normally worked a full five days prior to that. Thus, their weekends – But again, the Monday through Friday is when possible or whatever the iffy language is. So the Monday through Friday part you're saying is not on the table. There is no Monday through Friday part. This is the same – This is neutral as to which particular days of the week. So what you're saying is that sort of any class of claimants that you would be asserting this on behalf of are only those claimants who don't get the two days in a row and who one of the days that they have to work is a weekend day. Yes, that's the theory. And let me just go back to the main point here. I don't think – I'm trying to get through this to help the court think about this issue, but our most important position is that we don't believe any of these questions are jurisdictional. The only jurisdictional question under this court's decision in Fisher and in the cases that followed is whether a plaintiff who successfully pleads and proves a back pay act claim is entitled to money damages against the federal government. If that's true, and it certainly is, then there's jurisdiction. And all these questions that you're asking, they're not bad questions, but the problem is they're questions that should come up under 12b-6. They're questions as to whether the plaintiff sufficiently pled a claim for relief and ultimately whether they can prove it, not whether the back pay act is a money mandating statute. That's the only jurisdictional question. Okay, you're into your rebuttal. Why don't we hear from the government? Good morning, Your Honor. May it please the court? If nothing else, counsel makes a good argument why the Secret Service consistently has the lowest satisfaction ratings among its employees of any federal agency. Well, Your Honor, I certainly can appreciate that everybody would prefer to have two consecutive days as a weekend. I personally would also like that. The question is whether 6101a-3b is a money mandating provision such that the court of federal claims can exercise jurisdiction over the plaintiff's claim. So what about the last point that your friend on the other side is making, which is all of this is interesting, but it really goes to a 12b-6, not a jurisdictional analysis? We respectfully disagree. We believe that the court of federal claims did correctly decide this under 12b-1, and that the court of federal claims correctly looked at the text of 6101a-3b and answered two questions. Whether a substantive law provides jurisdiction to the court of federal claims is answered if that statute can be fairly interpreted as a mandating compensation by the federal government for damage sustained. And this statute is neither a pay statute, which provides that pay shall be given for certain activities, nor does it direct any consequence for an agency's failure to comply with the statute. We disagree that the agency has violated the statute, but just looking at the text of the statute... Well, how is it not violating the statute if it doesn't give them two days off their work? Because this statute provides for a policy that this is the way that the schedule should normally be... So you're saying as a grammatical matter, you think that that language that says when possible relates to all of it and not just to the first clause? Well, I think there's two answers to the questions. First is the text of a-3, which says, except when the head of an agency determines that its organization would be seriously handicapped or that its costs would be substantially increased. So there's a carving... But that's a merits determination. We don't know that that determination has been made. We can't, at a jurisdictional point, say that, yes, the agency can establish that it made that determination. No, but what I'm suggesting is that... You're talking about the structure of the statute. A-3, the preface to that, to the scheduling requirement or the scheduling preference, is already affording the agency some discretion in how it schedules employees and with respect to both the Monday through Friday and the two days outside the basic work week. But again, even assuming that there was not that discretion afforded to the agency within the statute, the problem that the plaintiffs have is that this is not a pay statute where there's language directing pay and Congress has not provided a financial or monetary consequence for any alleged violation of the statute. And the Back Pay Act does not provide that additional discretion. It seems to me you can rely on Spagnola, which is cited by your opponents. Spagnola was exactly where I was going to next during the court. At the end of that decision, the court says, unless some other provision of law commands the payment of money to the employee for the unjustified or unwarranted personal action, the Back Pay Act is inapplicable. In other words, the jurisdiction that's provided by the Back Pay Act is, as this court has said, merely derivative in nature. And just by way of explanation, oftentimes the reason that plaintiffs do cite the Back Pay Act in these types of complaints is because of the remedies that are afforded by the Back Pay Act, specifically interest and attorney's fees. And if the court looks at the complaint, that's precisely why the Back Pay Act was cited by the plaintiff. It was not because it was viewed as an independent source of court of federal claims jurisdiction. Is there any remedy at all for the fact that this provision, discretionary or not, is being ignored? Well, first, I would say that this policy has ended. But second, to the question of whether there's a remedy or where that remedy would lie, these employees could have requested or could have filed a grievance internally with their agency if they believe that this policy or personnel policy wasn't compliant with the statute. Perhaps they could have filed in district court. I would have to think about that a little bit. But the question here is really the narrow question of, is there a monetary remedy in the court of federal claims? And under this Court 12 settle precedent and Supreme Court precedent, it's plainly not. It's not a pay statute. It's not a statute that directs a financial consequence as a result of any failure to comply. So are you suggesting that the grievance process or otherwise the only relief would have been stop doing this prospectively? That they would not have been able to get some sort of relief for prior acts? For example, I'm an arbitrator and I'm going to award you an additional five days worth of comp time in order to compensate for the fact you didn't get your two days off. I'm not sure what kind of remedies might have been available under those. But if I'm right that there are remedies available that involve the payment of money or something that's of value, then why doesn't that hurt your argument here under 12b-1? Because the narrow question here is, does 6101a-3b, is it a money mandating statute? Well, what if we were to litigate this case and conclude that everything about it had been violated? In fact, that the head of the agency had not only not made that determination, but it made the opposite determination. And when possible, there was a showing that it was completely the opposite. What would be the relief that they could secure based on those findings? I'm not sure that there would have been any financial or monetary relief that would have been afforded. Well, it's hard for me to accept the not sure that it would have. The question we have here is, is it absolutely clear that there would have been no monetary relief rewarded? That's the question, is it not? No. The question is, is this the type of statute for which money— You're arguing that there's no monetary relief under this statute. Now, accepting the question that the Court of Federal Claims would have exercised jurisdiction and determined— There's certainly an argument they could have made, for example, as a whistleblower, that this adversely impacts the efficiency of the agency and its employees. I mean, perhaps that might have been a claim that they could have brought to the Office of Special Counsel. It would not be a claim that they could bring to the Court of Federal Claims. I mean, distilled to its essence, the argument appears to be, well, we used to be working more than 40 hours, and as a result of that, we were getting premium pay and overtime pay. But there's no right to work overtime. Certainly there's a right to pay if you perform overtime, but there's no right— So their expectation or their hope that they might have earned more money beyond the 40 hours a week does not provide the Court of Federal Claims with jurisdiction under the statute. I'd just like to briefly address Worthington, because I think that was one of the cases that the parties had some briefing on. The plaintiff cites to Worthington this court's decision in 1999 as a basis for alleging that the Back Pay Act is money mandating. And that was a case in which an employee was forcibly put on a compressed work schedule where the employee was working more than eight hours a day. And under that specific statute, there are limited legal reasons why an employee can be put on a compressed work schedule. And so where that had not happened, and the plaintiff had in fact worked more than eight hours a day, the statute does provide that overtime pay shall be paid. So aside from sort of generally understanding the Flexible Schedules Act as a scheduling statute, in fact, there was specific statutory language in 6123a2 that directed the payment of overtime where overtime was worked. So that is the distinction between Worthington and the scheduling statute at issue in this case, which, as we have explained and the trial court correctly found, is a statute that provides a preference for how schedules should be. But in that case, the overtime was only calculated because there were, I mean, if you put it all together, they weren't really working overtime. They were just in a compressed schedule. And in this case, they're in a schedule where they're technically working what would be in overtime hours. And in Worthington, he was technically working what would be overtime hours, but was not working more than 40 hours a week. Right? My understanding, I think that the facts of Worthington are a little. He was working more than eight hours. He was working more than eight hours a day. That's absolutely correct. Which is in violation, well, not in violation of the statute, but entitles him to compensation under the statute. Correct. In this case, the allegations that the plaintiffs have made is that they were required to work five days a week for eight hours a day. And the dispute is about which of those five out of seven days they were required to work. So we believe that that's the distinction that can be drawn there. And certainly to the extent that this court in Worthington said something different than what this court said in Spagnola, this court should follow Spagnola. For these reasons, we would respectfully request that the court affirm the judgment of the partial judgment of the court of federal claims. Thank you. I would like to, I think Judge Prost and Judge O'Malley, you got to the core of the jurisdictional question at issue here, which is not whether these particular plaintiffs can recover on the particular facts alleged, but whether if some plaintiffs were successfully to prove whatever they need to prove to recover under this, there's a potential for monetary recovery at the end. And if the answer to that question is yes, then there's jurisdiction. And the simple answer to, I believe it was Judge O'Malley. But you also have to have alleged that they're working more than 40 hours to make better. We don't. That's not the question under the Back Pay Act. The Back Pay Act doesn't say, doesn't measure damages against working more than 40 hours or not working 40 hours. It measures it against the paid quote an employee normally would have earned. That's the benchmark and that's what we're looking at. And on the question of what remedy is there, I think it was Judge O'Malley who said, well, what remedy is there if there is a violation of 60-101 if the scheduling isn't done right? And the answer to that is the Back Pay Act. The Back Pay Act says, the Back Pay Act has two elements. First, that a personnel action was unwarranted or unjustified, which a violation of the scheduling requirements would be. And second, that an employee earned less pay than they normally would have earned as a result. And that's exactly what we hope to prove on the merits. And that is also exactly why the court found jurisdiction in the Worthington case. That case is directly on point and should in all right control here. The only difference between Worthington and here is that Worthington was alleging a violation of a different scheduling statute in combination with the Back Pay Act. Doesn't that statute specifically provide for payment of additional monies when the employee is required to work more than eight hours during the day? No, that's not an overtime statute. That's also a scheduling statute. It's the Flexible and Compressed Scheduling Act. I think it's section 6624. And what it does is it provides an alternate set of rules to 6101. It says normally you have to reschedule for five, eight hours a day to get your 40 hours. An agency can offer under the Flexible Schedules Act for an employee to work longer days with more days off. In other words, you can work nine-hour days for the first nine days of a two-week period and then have the 10th day off. Under 6101, that would be more than 40 hours and that first week would be 45 and that would be overtime. The Flexible Scheduling Act says that's not going to be overtime because you're allowed to do that. That's not a payment statute. It's a scheduling statute, the same as 6101. Worthington is the same. And I'm almost out of time. Let me conclude with a point about Spaniola v. Stockman. That case, this court was reviewing a dismissal under 12b-6 and only under 12b-6. And when the court talks about the Back Pay Act as being derivative, it's only talking about the substance because that was all that was at issue. In other words, the Back Pay Act itself doesn't define whether a personnel action is unwarranted. You have to look to another statute for that on the substance. That's the scheduling statute. Spaniola says nothing about jurisdiction because it wasn't a 12b-1 case. Thank you. We thank both sides. The case is submitted and that concludes our proceedings for this morning. All rise.